FILED

FEB 1 1 2010

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

TYRONE BLOCKER,
          Plaintiff,

                                   CV 08-1196-PK

                                   OPINION AND
v.                               ORDER


WELLS FARGO BANK,
          Defendant.

PAPAK, Magistrate Judge:

    *Pro se* plaintiff Tyrone Blocker filed this action against defendant Wells Fargo Bank[1] on

October 14, 2008.  Blocker alleges that Wells Fargo discriminated against and harassed him

based on his race.  In his complaint as originally filed, Blocker asserted claims against Wells

Fargo under 42 U.S.C. §§ 1983 and 1985.  On March 6, 2009, Blocker moved for leave to file an

amended complaint.  The proposed amended pleading alleged claims under 42 U.S.C. §§ 1981,

1982, and 2000a, as well as common law claims for intentional infliction of emotional distress,

fraud, invasion of privacy, slander of Blocker's business, and defamation of Blocker in his own

person.  On September 1, 2009, the court accepted Blocker's amended complaint for filing, and

---

[1]  The correct legal name of the entity served with summons in this action is Wells Fargo
Bank Northwest, N.A.

Page 1 - OPINION AND ORDER

granted Wells Fargo's motion to dismiss the claim under 42 U.S.C. § 2000a and the common law

claims for fraud, invasion of privacy, and slander of Blocker's business.

Now before the court are Blocker's two motions (#67, 68) to compel the production of

documents. I have considered the motions and all of the pleadings on file. For the reasons set

forth below, Blocker's first motion (#67) to compel is granted and his second motion (#68) to

compel is denied.

## LEGAL STANDARDS

### I.    Scope of Permissible Discovery, Generally

Federal Civil Procedure Rule 26(b)(1) provides that "[p]arties may obtain discovery

regarding any nonprivileged matter that is relevant to any party's claim or defense – including the

existence, description, nature, custody, condition, and location of any documents or other

tangible things and the identity and location of persons who know of any discoverable matter."

Fed. R. Civ. P. 26(b)(1). The Rule specifies that "[r]elevant information need not be admissible

at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible

evidence." *Id.* However, the district courts should limit the scope of discovery under specified

circumstances, as follows:

> On motion or on its own, the court must limit the frequency or extent of discovery
> otherwise allowed by these rules or by local rule if it determines that:
>
>> (i) the discovery sought is unreasonably cumulative or duplicative, or can be
>> obtained from some other source that is more convenient, less burdensome, or less
>> expensive;
>>
>> (ii) the party seeking discovery has had ample opportunity to obtain the
>> information by discovery in the action; or
>>
>> (iii) the burden or expense of the proposed discovery outweighs its likely benefit,

considering the needs of the case, the amount in controversy, the parties'
resources, the importance of the issues at stake in the action, and the importance
of the discovery in resolving the issues.

Fed. R. Civ. P. 26(b)(2)(C).

## II.    Motion to Compel

As noted above, Federal Civil Procedure Rule 26(b)(1) authorizes discovery regarding

any matter, not privileged, that is relevant to the claim or defense of any party. Rule 26(b)(1) is

to be construed broadly, and encompasses any matter that bears on, or that reasonably could lead

to other matters that would bear on, any issue that is or may be in the case. *See, e.g.,*

*Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351, 351 n. 12 (1978).

If a party elects to oppose a propounding party's discovery requests, the opposing party

bears the burden of establishing that the discovery is overly broad, unduly burdensome or not

relevant, *see Graham v. Casey's General Stores*, 206 F.R.D. 251, 253-4 (S.D. Ind. 2000), or

protected by any applicable evidentiary privilege, *see United States v. Ruehle*, 583 F.3d 600, 609

(9th Cir. 2009). "Boilerplate, generalized objections are inadequate and tantamount to not

making any objection at all." *Walker v. Lakewood Condominium Owners Assoc.*, 186 F.R.D.

584, 587 (C.D. Cal. 1999); *see also Farber and Partners, Inc. v. Garber*, 234 F.R.D. 186 (C.D.

Cal. 2006).

Federal Civil Procedure Rule 37(a)(3)(B) empowers a propounding party to "move for an

order compelling an answer, designation, production, or inspection" if:

(i) a deponent fails to answer a question asked under Rules 30 or 31;

(ii) a corporation or other entity fails to make a designation under Rule 30(b)(6) or
31(a)(4);

(iii) a party fails to answer an interrogatory submitted under Rule 33, or

(iv) a party fails to respond that inspection will be permitted — or fails to permit inspection — as requested under Rule 34.

Fed. R. Civ. Pro. 37(a)(3)(B).  Moreover, Rule 37(a)(4) provides that "an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(4).  Rule 26 provides that "[f]or good cause, the court may order discovery of any matter relevant to the subject matter involved in the action." Fed. R. Civ. Pro. 26(b)(1).

## FACTUAL BACKGROUND

### I.    The Parties' Dispute

Blocker alleges that in February 2008, his mother Jean Blocker ("Jean") attempted "with power of attorney" to withdraw funds from Blocker's Wells Fargo account, at a Salem, OR, Wells Fargo location.  Blocker alleges that the bank manager for the Salem branch refused to permit Jean to withdraw funds from the account, referring her to the Portland branch where Blocker had originally opened his account.  Subsequently, Blocker alleges, the bank manager of the Portland branch where Blocker had originally opened his account refused to permit Jean to withdraw funds from her son's account, informed her that Blocker was "in a lot of trouble," and advised her that the account was frozen pending a fraud investigation.

Blocker alleges that he attempted personally to withdraw funds from his account in June 2008, and was unsuccessful.  Blocker alleges that he then contacted the manager of the Portland branch where he had originally opened his account, who again advised him that his account was frozen pending a fraud investigation.  The manager allegedly advised Blocker to contact "Carol," the fraud investigator Wells Fargo had assigned to Blocker's case.  Blocker alleges that Carol

advised him that she was conducting, jointly with the Internal Revenue Service, an investigation

of possible fraud in connection with Blocker's account.

Blocker alleges that he subsequently provided Carol's name and contact information to

certain of his clients who were inquiring as to the status of their tax refunds. He further alleges

that his clients contacted Carol and were informed by her that Wells Fargo and the I.R.S. were

jointly investigating possible fraud in connection with Blocker's account.

Blocker further alleges that, in October 2008, a teleconference was conducted with

Blocker, some of his clients, Carol, and a representative of the I.R.S. Blocker alleges that in the

course of this teleconference, the I.R.S. representative denied that it had undertaken any

investigation in connection with Blocker's account. It appears that Wells Fargo subsequently

permitted Blocker to access the funds in his bank account.

## II.    Procedural History

This action was filed October 14, 2008. In his complaint as originally filed, Blocker

alleged Wells Fargo's liability under 42 U.S.C. §§ 1983 and 1985 for racial discrimination and

harassment. Wells Fargo responded to Blocker's complaint by filing a motion to dismiss on

November 21, 2008.

On December 11, 2008, Blocker filed a document styled as an amended complaint (the

"filing of December 11, 2008"), purporting to allege Wells Fargo's liability for racial

discrimination and harassment under 42 U.S.C. § 1981. On December 18, 2008, Wells Fargo

moved to strike the filing of December 11, 2008, pursuant to Federal Civil Procedure Rule 12(f)

and, in the alternative, to dismiss the Section 1981 claim putatively alleged therein.

On January 16, 2009, Blocker filed a motion for leave to amend his complaint. In

support, Blocker provided a copy of his proposed amended pleading, which alleges Wells Fargo's

liability for racial discrimination under 42 U.S.C. §§ 1981, 1982, and 2000a, and, in addition,

alleges state-law claims of negligence, intentional infliction of emotional distress, intentional

interference with economic relations, invasion of privacy, and fraud. Wells Fargo moved to

dismiss the proposed amended pleading, in the event this court were to grant the motion for leave

to amend, on February 5, 2009.

On March 6, 2009, Blocker filed a second motion for leave to amend his complaint. This

most recent proposed amended pleading alleges Wells Fargo's liability for racial discrimination

under 42 U.S.C. §§ 1981, 1982, and 2000a and alleges state-law claims of intentional infliction

of emotional distress, fraud, invasion of privacy, slander, and defamation. Wells Fargo moved to

dismiss the amended pleading on March 12, 2009.

On April 10, 2009, Wells Fargo moved to strike Blocker's filings in opposition to Wells

Fargo's first motion to strike and second and third alternative motions to dismiss. Wells Fargo

argues that the subject filings were untimely filed.

On June 2, 2009, I recommended that Wells Fargo's motion to dismiss Blocker's

originally-filed complaint be denied as moot, that Wells Fargo's first motion to strike be denied

as moot, that Wells Fargo's motion to dismiss Blocker's putative first amended complaint be

denied as moot, that Blocker's first motion for leave to file an amended complaint be denied as

moot, that Wells Fargo's motion to dismiss Blocker's putative second amended complaint be

denied as moot, that Blocker's second motion for leave to file an amended complaint be granted,

that Wells Fargo's motion to dismiss Blocker's putative third amended complaint be granted with

prejudice as to Blocker's claims for fraud and invasion of privacy, granted without prejudice as to

Page 6 - OPINION AND ORDER

Blocker's claims for violation of 42 U.S.C. § 2000a and for defamation of Blocker's business, and otherwise denied, that Wells Fargo's second motion to strike be denied, and that the clerk of court be directed to file Blocker's putative third amended complaint as Blocker's amended complaint. On September 1, 2009, Judge Haggerty adopted my recommendations without modification.

## ANALYSIS

### I.    First Motion to Compel

In his first motion to compel, Blocker seeks production of an unredacted version of a document produced by Wells Fargo in redacted form under Bates number WFB 0192. The document contains a chain of email messages among several Wells Fargo employees, in which Blocker's dispute with Wells Fargo was discussed. Before producing the document in discovery, Wells Fargo redacted approximately two lines of text following the phrase "The store mgr Vivek Siddhu called and talked to Doreen while I was at lunch . . . legal advised him" from an email message sent by Laurie Christopherson to Carole Byrum, on the grounds that the redacted text was subject to the attorney-client privilege.

"The attorney-client privilege protects confidential disclosures made by a client to an attorney in order to obtain legal advice, . . . as well as an attorney's advice in response to such disclosures." *United States v. Chen*, 99 F.3d 1495, 1501 (9th Cir. 1996) (ellipsis original), *quoting In re Grand Jury Investigation*, 974 F.2d 1068, 1070 (9th Cir. 1992). The privilege is applicable both when attorneys represent their clients in connection with litigation and when attorneys provide advice in a counseling or planning role. *See id.*

> When the client is by nature a group, as is true of both the government and corporations, the courts have agreed that the privilege should not be defeated by some limited circulation beyond the attorney and the person within the group who

Page 7 - OPINION AND ORDER

requested the advice. The test … is whether the [entity] is able to demonstrate that the documents, and therefore the confidential information contained therein, were circulated no further than among those members "of the organization who are authorized to speak or act for the organization in relation to the subject matter of the communication." The purpose of the privilege is limited to protection of confidential facts. If facts have been made known to persons other than those who need to know them, there is nothing on which to base a conclusion that they are confidential.

*Wyoming v. USDA*, 239 F. Supp. 2d 1219, 1230 (D. Wyo. 2002) (ellipsis, internal quotation marks, omission of citations original), *quoting Coastal States Gas Corp. v. Department of Energy*, 617 F.2d 854, 863 (D.C. Cir. 1980). It is the burden of the party asserting the privilege to establish each element of the privilege. *See Ruehle*, 583 F.3d at 608, *citing United States v. Munoz*, 233 F.3d 1117, 1128 (9th Cir. 2000).

Here, it is clear that neither Laurie Christopherson nor Carole Byrum was either an attorney or the direct recipient of Wells Fargo's attorney's legal advice. Instead, the communication between the two employees was a tertiary-level communication in which two employees of a client discussed legal advice provided by the client's attorney to a different employee of the client, who disclosed the advice to yet a fourth employee, who disclosed it in turn to the author of the communication, who disclosed it to her interlocutor in the communication itself. As such, it is Wells Fargo's burden to establish that Christopherson, Byrum, and the "Doreen" mentioned in the text of the message, as well as any other person to whom the legal advice was disclosed, were each persons "authorized to speak or act" for Wells Fargo in connection with the advice the store manager received from Wells Fargo's in-house counsel.

Wells Fargo has not made any effort to meet its burden. Instead, Wells Fargo

mischaracterizes the communication as one in which "a WFB employee noted what the legal department advised him" and concludes without analysis of the confidentiality issues that "[t]he advice from the legal department is protected by the attorney-client privilege and was appropriately redacted." In the absence of any information as to the content of the legal advice or as to the job duties of the persons to whom the advice was disclosed, there is no basis for concluding that the advice was intended to be confidential or that the confidentiality of the advice was maintained. There being no basis for finding the attorney-client privilege applicable to the communication between Christopherson and Byrum, Blocker's first motion to compel is granted, and Wells Fargo is ordered to produce an unredacted version of the document Bates-stamped WFB 0192.

## II.    Second Motion to Compel

In his second motion to compel, Blocker seeks production of documents responsive to his first, sixth, and seventh requests for documents contained in his second set of requests for production. Wells Fargo asserts to the court that, simultaneously with filing its opposition to Blocker's two motions to compel, Wells Fargo produced documents responsive to the sixth and seventh requests for production. Thus, I consider the motion to compel only in connection with Blocker's first request for production.

The first request of Blocker's second set of requests for production seeks production of "all Federal Reserve regulations, operating circulars, and clearing house rules." Wells Fargo objects to this request on the grounds that it is "vague, overly broad in time and scope, unduly burdensome, and seeks irrelevant and inadmissible documents." Blocker appears to argue in support of his motion to compel that the requested documents are relevant and admissible in that

Page 9 - OPINION AND ORDER

they are "agreements binding upon both plaintiff and defendant" and that it would not be unduly burdensome to require Wells Fargo to produce the documents.  Wells Fargo responds that, as the "largest financial institution headquartered in the western U.S.," the number of Federal Reserve regulations, operating circulars, and clearing house rules applicable to it in all its branches would be unmanageable and unduly burdensome.  Wells Fargo also argues that the applicability of the requested documents to Blocker's claims "has not been identified."

Wells Fargo is largely correct.  It appears overwhelmingly likely that Blocker's request compasses a vast number of documents within its scope, the majority of which have no conceivable connection to Blocker's claims.  It would therefore be unduly burdensome to require Wells Fargo to produce all documents responsive to Blocker's first request for production. Blocker's second motion to compel is therefore denied.  Blocker remains free to propound a new request for production more narrowly tailored to the claims and defenses at issue in this action.

## CONCLUSION

For the reasons set forth above,  Blocker's first motion (#67) to compel is granted, and Blocker's second motion (#68) to compel is denied to the extent it seeks production of documents responsive to Blocker's first request for production contained in his second set of requests for production and is otherwise denied as moot.

Dated this 11th day of February, 2010.

Honorable Paul Papak
United States Magistrate Judge

Page 10 - OPINION AND ORDER