FILED

MAY 1 0 2010

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

TYRONE BLOCKER,
      Plaintiff,

                                    CV 08-1196-PK

                                      OPINION AND
v.                                   ORDER


WELLS FARGO BANK,
      Defendant.

PAPAK, Magistrate Judge:

This action was filed October 14, 2008, by *pro se* plaintiff Tyrone Blocker against defendant Wells Fargo Bank.[1]  Blocker alleges that Wells Fargo discriminated against and harassed him based on his race.  This court has jurisdiction over Blocker's action pursuant to 28 U.S.C. §§ 1331 and 1361.

Now before the court are Blocker's motions (#82, #85) to compel discovery responses.  I have considered the motions and all of the pleadings on file.  For the reasons set forth below, Blocker's first motion (#82) to compel is granted as to Requests for Admission Nos. 11, 12, and 17, and otherwise denied, and his second motion (#85) to compel is denied in its entirety.

------

     [1] The correct name of the entity served with summons in this action is Wells Fargo Bank Northwest, N.A.

Page 1 - OPINION AND ORDER

## LEGAL STANDARDS

### I.    Scope of Permissible Discovery, Generally

Federal Civil Procedure Rule 26(b)(1) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense – including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter." Fed. R. Civ. P. 26(b)(1). The Rule specifies that "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id.* However, the district courts should limit the scope of discovery under specified circumstances, as follows:

> On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that:
>
>> (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
>>
>> (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or
>>
>> (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

Fed. R. Civ. P. 26(b)(2)(C).

### II.    Motion to Compel

As noted above, Federal Civil Procedure Rule 26(b)(1) authorizes discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party. Rule 26(b)(1) is

to be construed broadly, and encompasses any matter that bears on, or that reasonably could lead to other matters that would bear on, any issue that is or may be in the case. *See, e.g., Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351, 351 n. 12 (1978).

If a party elects to oppose a propounding party's discovery requests, the opposing party bears the burden of establishing that the discovery is overly broad, unduly burdensome or not relevant. *See Graham v. Casey's General Stores*, 206 F.R.D. 251, 253-4 (S.D. Ind. 2000). "Boilerplate, generalized objections are inadequate and tantamount to not making any objection at all." *Walker v. Lakewood Condominium Owners Assoc.*, 186 F.R.D. 584, 587 (C.D. Cal. 1999); *see also Farber and Partners, Inc. v. Garber*, 234 F.R.D. 186 (C.D. Cal. 2006).

Federal Civil Procedure Rule 37(a)(3)(B) empowers a propounding party to "move for an order compelling an answer, designation, production, or inspection" if:

(i) a deponent fails to answer a question asked under Rules 30 or 31;

(ii) a corporation or other entity fails to make a designation under Rule 30(b)(6) or 31(a)(4);

(iii) a party fails to answer an interrogatory submitted under Rule 33, or

(iv) a party fails to respond that inspection will be permitted — or fails to permit inspection — as requested under Rule 34.

Fed. R. Civ. Pro. 37(a)(3)(B). Moreover, Rule 37(a)(4) provides that "an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(4). Rule 26 provides that "[f]or good cause, the court may order discovery of any matter relevant to the subject matter involved in the action." Fed. R. Civ. Pro. 26(b)(1).

### III.    Requests for Admission

Federal Civil Procedure Rule 36 governs requests for admission. Rule 36(a)(1) provides

that :

> A party may serve on any other party a written request to admit, for purposes of
> the pending action only, the truth of any matters within the scope of Rule 26(b)(1)
> relating to:
>
> > (A) facts, the application of law to fact, or opinions about either; and
> >
> > (B) the genuineness of any described documents.

Fed. R. Civ. P. 36(a)(1). Rule 36(a)(4) provides that:

> If a matter is not admitted, the answer must specifically deny it or state in detail
> why the answering party cannot truthfully admit or deny it. A denial must fairly
> respond to the substance of the matter; and when good faith requires that a party
> qualify an answer or deny only a part of a matter, the answer must specify the part
> admitted and qualify or deny the rest. The answering party may assert lack of
> knowledge or information as a reason for failing to admit or deny only if the party
> states that it has made reasonable inquiry and that the information it knows or can
> readily obtain is insufficient to enable it to admit or deny.

Fed. R. Civ. P. 36(a)(4).

Federal Civil Procedure Rule 37(c)(2) governs the circumstance in which a party either

fails to respond or fails adequately to respond to a request for admission propounded under

Federal Civil Procedure Rule 36:

> If a party fails to admit what is requested under Rule 36 and if the requesting party
> later proves a document to be genuine or the matter true, the requesting party may
> move that the party who failed to admit pay the reasonable expenses, including
> attorney's fees, incurred in making that proof. The court must so order unless:
>
> > (A) the request was held objectionable under Rule 36(a);
> >
> > (B) the admission sought was of no substantial importance;
> >
> > (C) the party failing to admit had a reasonable ground to believe that it
> > might prevail on the matter; or
> >
> > (D) there was other good reason for the failure to admit.

Page 4 - OPINION AND ORDER

Fed. R. Civ. P. 37(c)(2).  In relevant part, Rule 36(a) provides that:

> The requesting party may move to determine the sufficiency of an answer or
> objection.  Unless the court finds an objection justified, it must order that an
> answer be served.  On finding that an answer does not comply with this rule, the
> court may order either that the matter is admitted or that an amended answer be
> served.  The court may defer its final decision until a pretrial conference or a
> specified time before trial.  Rule 37(a)(5) applies to an award of expenses.

Fed. R. Civ. P. 36(a)(6).

## FACTUAL BACKGROUND

### I.    Underlying History

Blocker alleges that he opened checking and savings accounts with defendant Wells

Fargo at one of its NE Portland, OR, branches in or around February 2006.  Subsequently, in

January 2008, Blocker relocated to Salem, OR, advising Wells Fargo of his change of address.

Blocker further alleges that between February 2008 and April 2008 the Internal Revenue

Service deposited a number of third-party tax refund checks into his Wells Fargo checking

account.  The checks appear to have been made out to the names of certain of Blocker's "clients."

He further alleges that in February 2008, his mother Jean Blocker ("Jean") attempted "with power

of attorney" to withdraw funds from Blocker's Wells Fargo account, at a Salem, OR, Wells Fargo

location.  Blocker alleges that the bank manager for the Salem branch refused to permit Jean to

withdraw funds from the account, referring her to the Portland branch where Blocker had

originally opened his account.  Subsequently, Blocker alleges, the bank manager of the Portland

branch where Blocker had originally opened his account refused to permit Jean to withdraw

funds from her son's account, informed her that Blocker was "in a lot of trouble," and advised her

that the account was frozen pending a fraud investigation.

Blocker alleges that he attempted personally to withdraw funds from his account in June 2008, and was unsuccessful. Blocker alleges that he then contacted the manager of the Portland branch where he had originally opened his account, who advised him that his account was frozen pending a fraud investigation. The manager allegedly advised Blocker to contact "Carol," the fraud investigator Wells Fargo had assigned to Blocker's case. Blocker alleges that Carol told him that, jointly with the Internal Revenue Service, she was conducting an investigation of possible fraud in connection with Blocker's account.

Blocker alleges that he subsequently provided Carol's name and contact information to certain of his clients who were inquiring as to the status of their tax refunds. He further alleges that his clients contacted Carol and were informed by her that Wells Fargo and the I.R.S. were jointly investigating possible fraud in connection with Blocker's account.

Blocker further alleges that, in October 2008, a teleconference was conducted with Blocker, some of his clients, Carol, and a representative of the I.R.S. Blocker alleges that in the course of this teleconference, the I.R.S. representative denied that it had undertaken any investigation in connection with Blocker's account. It appears that Wells Fargo subsequently permitted Blocker to access the funds in his bank account.

It is Blocker's position that Wells Fargo elected to initiate its fraud investigation, to freeze Blocker's account, and to retain Blocker's funds for improper, discriminatory reasons, specifically because Blocker and "the majority of his clients" were black.

## II.    The Parties' Discovery Disputes

On January 19, 2010, Blocker propounded a second set of requests for admissions and a third set of requests for production of documents in this action. Wells Fargo provided responses

Page 6 - OPINION AND ORDER

to Blocker's second set of requests for admissions and third set of requests for production on or around February 22, 2010. Blocker now characterizes Wells Fargo's responses to his requests for admissions numbered 5, 7, 8, 10, 11, 12, 15, 16, 17, and 18, and to his requests for production numbered 1, 2, and 4 as inadequate.

**ANALYSIS**

As a preliminary matter, I note that each of Blocker's two motions now before the court is out of compliance with Local Rules 7-1[2](a) and 7-1(c). Local Rule 7-1(a) requires that the first paragraph of every motion filed with the court contain a statement certifying that:

(A)   The parties made a good faith effort through personal or telephone conferences to resolve the dispute and have been unable to do so; or

(B)   The opposing party willfully refused to confer; or

(C)   The moving party or opposing party is a prisoner not represented by counsel.

L.R. 7-1(a)(1).[3] Local Rule 7-1(a) expressly provides that the court may deny any motion that fails to meet this certification requirement. *See* L.R. 7-1(a)(2).

Local Rule 7-1(c) requires that every motion be accompanied by a separate, and separately filed, legal memorandum. *See* L.R. 7-1(c). That is, the legal argument supporting any motion filed with the court must be contained within a different document from the document containing the motion itself. *See id.*

In the interest of resolving this dispute speedily, I'll overlook Blocker's noncompliance

---

[2] Prior to December 1, 2009, the provisions of Local Rule 7-1 were codified at Local Rule 7.1.

[3] Local Rule 7-1(a) further requires that the caption of any motion not opposed by any non-moving party shall contain the word "UNOPPOSED."

Page 7 - OPINION AND ORDER

with the Local Rules described above, for purposes of the motions now before the court only.

However, in the event any party files any further motion that fails to comply with these Local

Rules, I will deny the motion or recommend that it be denied without further consideration.

## I.    Blocker's Motion to Compel Responses to Requests for Admission

### A.    Request for Admission No. 5

Blocker's Request for Admission No. 5, and Wells Fargo's response thereto, are as

follows:

> **REQUEST FOR ADMISSION NO. 5:** Do you admit or deny that plaintiff's
> account was frozen pending an investigation, due to fraud against the I.R.S.?

> **RESPONSE TO REQUEST NO. 5:** [Wells Fargo] admits plaintiff's account
> was frozen for suspicious activity, but denied the remainder of Request for
> Admission No. 5.

Blocker argues that Wells Fargo's response is inadequate, asserting that he is in possession of

evidence indicating that Wells Fargo investigated Blocker for fraud.  However, analysis of the

response establishes that it addresses the substance of the request without any improper evasion.

If Blocker feels that his evidence establishes the truth of the denied portion of his request for

admission, namely, that his account was frozen "due to fraud against the I.R.S.," he may move

that Wells Faro pay his fees and expenses reasonably incurred in establishing the denied fact.

The motion to compel is denied as to Request for Admission No. 5.

### B.    Request for Admission No. 7

Blocker's Request for Admission No. 7, and Wells Fargo's response thereto, are as

follows:

> **REQUEST FOR ADMISSION NO. 7:** Do you admit or deny that since
> defendant [removed the "freeze" from Blocker's accounts] on October 8, 2008,

Loss prevention or Carole determined that no fraud existed?

**RESPONSE TO REQUEST NO. 7:**  [Wells Fargo] denies.

Blocker argues that Wells Fargo's response is inadequate, suggesting that the response is untrue.

However, analysis of the response establishes that it addresses the substance of the request

without any improper evasion.  If Blocker later establishes the truth of the requested admission,

namely, he may move that Wells Faro pay his fees and expenses reasonably incurred in

establishing the denied fact.  The motion to compel is denied as to Request for Admission No. 7.

C.    **Request for Admission No. 8**

Blocker's Request for Admission No. 8, and Wells Fargo's response thereto, are as

follows:

**REQUEST FOR ADMISSION NO. 8:**  Do you admit or deny that the defendant
could have simply returned the deposits without a fraud investigation?

**RESPONSE TO REQUEST NO. 8:**  Returned the deposits to whom?  The
question is vague, therefore [Wells Fargo] denies.

Blocker argues that Wells Fargo "clearly [k]no[ws] plaintiff is speaking of the I.R.S.," but

analysis of the request establishes the accuracy of Wells Fargo's characterization of it as vague.

Because Wells Fargo's objection is justified, the motion to compel is denied as to Request for

Admission No. 8.

D.    **Request for Admission No. 10**

Blocker's Request for Admission No. 10, and Wells Fargo's response thereto, are as

follows:

**REQUEST FOR ADMISSION NO. 10:**  Do you admit or deny that defendant
has the ability to return electronic tax refund deposits it refused to accept, even if
they're deposited by the I.R.S.?

**RESPONSE TO REQUEST NO. 10:** [Wells Fargo] denies; how could it return something that had never been accepted?

Blocker argues that Wells Fargo's response is inadequate, suggesting that Wells Fargo has evaded the question and, moreover, asserting that Wells Fargo is able to return checks deposited by the I.R.S. However, Wells Fargo is not required to, and indeed should not, respond to theoretical requests for admission that it appears a propounding party might have intended to ask for, but rather must respond to the requests for admission actually propounded. Because Wells Fargo properly responded to the request for admission as Blocker articulated it, its response addresses the substance of the request without improper evasion, and the motion to compel is denied as to Request for Admission No. 10.

**E.    Requests for Admission Nos. 11 and 12**

Blocker's Request for Admission Nos. 11 and 12, and Wells Fargo's responses thereto, are as follows:

**REQUEST FOR ADMISSION NO. 11:** Do you admit or deny that defendant allowed, in the last ten (10) years for a customer to have the I.R.S. electronically deposit third party tax refund(s) into their personal or business accounts?

**RESPONSE TO REQUEST NO. 11:** [Wells Fargo] is without specific knowledge to determine what could or could not have occurred in each and every one of its very large number of personal or business accounts in the numerous states in which it does business, so [Wells Fargo] denies Request for Admission No. 11.

**REQUEST FOR ADMISSION NO. 12:** Do you admit or deny that defendant allowed, in the last ten (10) years for a customer to electronically deposit third party tax refund(s) into their accounts?

**RESPONSE TO REQUEST NO. 12:** [Wells Fargo] denies; see Response to Request for Admission No. 11.

Blocker asserts, correctly, that Wells Fargo does not satisfy its discovery obligations merely by

Page 10 - OPINION AND ORDER

stating that it lacks specific knowledge as to the truth or falsity of the matter of the requests, but rather must, in addition, make reasonable inquiry to determine whether the requested admissions are true. *See* Fed. R. Civ. P. 36(a)(4). Moreover, Blocker is correct that the requested admissions go to the heart of his claim that Wells Fargo was improperly motivated when it elected to freeze his accounts. Because Wells Fargo's responses are insufficient, *see* Fed. R. Civ. P. 36(a)(6), the motion to compel is granted as to Request for Admission Nos. 11 and 12.

**F.    Request for Admission No. 15**

Blocker's Request for Admission No. 15, and Wells Fargo's response thereto, are as follows:

> **REQUEST FOR ADMISSION NO. 15:** Do you admit or deny that defendant's first contact with the I.R.S. occurred when Cheryl Mohr, plaintiff and the I.R.S. contacted Carole Byrum?
>
> **RESPONSE TO REQUEST NO. 15:** [Wells Fargo] denies.

Blocker argues that Wells Fargo's response is inadequate, asserting that he is in possession of evidence indicating that Wells Fargo's first contact with the I.R.S. occurred when he and Cheryly Mohr contacted Carole Byrum. However, analysis of the response establishes that it addresses the substance of the request without any improper evasion. If Blocker feels that his evidence establishes the truth of the requested admission, he may move that Wells Faro pay his fees and expenses reasonably incurred in establishing the denied fact. The motion to compel is denied as to Request for Admission No. 15.

**G.    Request for Admission No. 16**

Blocker's Request for Admission No. 16, and Wells Fargo's response thereto, are as follows:

Page 11 - OPINION AND ORDER

**REQUEST FOR ADMISSION NO. 16:** Do you admit or deny that it would be illegal for defendant to allow any agency, State or Federal, that presents a legal order, to garnish plaintiff's account, if the funds were frozen pending a fraud investigation based on the funds that came from the I.R.S.?

**RESPONSE TO REQUEST NO. 16:** [Wells Fargo] denies as Request for Admission No. 16 is overly broad and incomprehensible.

Blocker suggests that Wells Fargo's objection to Request for Admission No. 16 is unjustified. However, analysis of the request establishes that the gravamen of the request is not readily determinable. Because Wells Fargo's objection is justified, the motion to compel is denied as to Request for Admission No. 16.

**H.    Request for Admission No. 17**

Blocker's Request for Admission No. 17, and Wells Fargo's response thereto, are as follows:

**REQUEST FOR ADMISSION NO. 17:** Do you admit or deny that, if other banks accept third party tax refund checks deposited by the I.R.S., or their customers, electronically into their accounts, defendant would be violating its standard of care for investigating plaintiff for doing what other banks allow?

**RESPONSE TO REQUEST NO. 17:** [Wells Fargo] denies; see Response to Request for Admission No. 14 [in which Wells Fargo stated that "[Wells Fargo] cannot admit to what other bank's [*sic*] policies or procedures in the entire country may be. . . "].

Blocker argues that Wells Fargo's response is inadequate. Analysis of the request and of the response thereto establishes that Wells Fargo's objection is unjustified and that Wells Fargo failed fairly to address the substance of the request. That is, Request for Admission No. 17 does not require Wells Fargo to admit to policies or procedures of other banks, but rather poses a counterfactual: *if* other banks accept certain deposits, would Wells Fargo violate its own standards by disallowing those deposits? Because Wells Fargo's objection was unjustified, the

motion to compel is granted as to Request for Admission No. 17.

I.      **Request for Admission No. 18**

Blocker's Request for Admission No. 18, and Wells Fargo's response thereto, are as

follows:

> **REQUEST FOR ADMISSION NO. 18:** Do you admit or deny that you are not responsible for acts and omissions of the I.R.S., when the I.R.S. makes electronic deposits?
>
> **RESPONSE TO REQUEST NO. 18:** Makes electronic deposits where? [Wells Fargo] admits as a general concept that it is not responsible for the acts and omissions of the I.R.S., but because the question is vague, the remainder must be denied.

Blocker argues that Wells Fargo's response is inadequate. However, analysis of the response

establishes that it addresses the substance of the request without any improper evasion, and

although it objects to a portion of the request as vague, it appears nevertheless to respond with

sufficient precision to permit Blocker to prepare his case. The motion to compel is therefore

denied as to Request for Admission No. 18.

II.     **Blocker's Motion to Compel Production of Documents**

A.      **Request for Production No. 1**

Blocker's Request for Production No. 1, and Wells Fargo's response thereto, are as

follows:

> **FIRST REQUEST:** Produce records, names, addresses and phone numbers of all Wells Fargo Bank customers who, in the past Ten (10) years electronically deposited third party tax refund checks in their personal accounts and got placed under a fraudulent investigation.
>
> **RESPONSE:** No such documents exist, because Wells Fargo Bank does not conduct "fraudulent investigations."

Page 13 - OPINION AND ORDER

Blocker appears not to understand the gravamen of Wells Fargo's objection. Wells Fargo does

not deny that it conducts investigations of possible fraud, but rather insists that no investigation it

undertakes is fraudulent. Wells Fargo's position is entirely justified. While it may be unlikely

that Blocker intended the plain meaning of the words "fraudulent investigation" when he wrote

them, Wells Fargo is not required to, and, as noted above, should not respond to theoretical

discovery requests that it appears a propounding party might have intended to issue, but rather

must respond to the discovery requests actually propounded. The motion to compel is therefore

denied as to Request for Production No. 1.

      **B.**     **Request for Production No. 2**

      Blocker's Request for Production No. 2, and Wells Fargo's response thereto, are as

follows:

> **SECOND REQUEST:**  Produce dates and times that Carole Byrum talked with
> plaintiff, Cheryl Mohr, and the I.R.S. representatives over the telephone.
>
> **RESPONSE:**  [Wells Fargo] objects because this request does not seek document
> production, any responsive documents have already been produced, and defendant
> already answered to Request for Production No. 2 to the Second Set of Requests
> for Production: "Defendant further objects to providing documents privileged
> pursuant to 12 C.F.R. 21.11."

Wells Fargo notes, correctly, that the request does not request the production of documents but

rather, in the manner of an interrogatory, requests facts. In addition, Wells Fargo's response

suggests that it has already produced documents reflecting or containing the requested facts. The

motion to compel is therefore denied as to Request for Production No. 2.

      **C.**     **Request for Production No. 4**

      Blocker's Request for Production No. 4, and Wells Fargo's response thereto, are as

follows:

>**FOURTH REQUEST:**  Produce all legal order [*sic*] that defendant received, that allowed defendant to withdraw funds, plus bank fees, in the amount of $2,102.00, out of plaintiff's account on April 23, 2008.

>**RESPONSE:**  If such an order exists, [Wells Fargo] will provide a copy.

Blocker characterizes Wells Fargo's response as an objection; however, the response clearly indicates that if responsive documents exist they will be produced.  The motion to compel is therefore denied as to Request for Production No. 4.

## CONCLUSION

For the reasons set forth above, Blocker's first motion (#82) to compel is granted as to Requests for Admission Nos. 11, 12, and 17, and otherwise denied, and his second motion (#85) to compel is denied in its entirety.

Dated this 10th day of May, 2010.

Honorable Paul Papak
United States Magistrate Judge

Page 15 - OPINION AND ORDER